IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JAMARIUS GANT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-01138-STA-jay |
| ) | |
| JOHNNY FITZ, ) | |
| ) | |
| Respondent. ) | |

ORDER DIRECTING CLERK TO MODIFY DOCKET AND SEAL DOCUMENT,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Jamarius Gant has filed a *pro se* habeas corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the following reasons, the Petition is **DENIED**.

BACKGROUND

In 2015, a Madison County, Tennessee, grand jury indicted Petitioner for one count of aggravated robbery, one count of burglary of a vehicle, one count of aggravated kidnapping, one count of employing a firearm during the commission of a dangerous felony, two counts of being a convicted felon in possession of a handgun, and one count of possessing a weapon with an altered serial number. (ECF No. 12-1 at 20-27.) Gant pleaded guilty to both counts of being a felon in possession of a handgun, and the State dismissed the charge of employing a firearm during the commission of a dangerous felony. (*Id.* at 74-76.) Petitioner proceeded to trial before a jury on

the remaining counts. *State v. Gant*, No. W2016-02482-CCA-R3-CD, 2017 WL 4457593, at *4 (Tenn. Crim. App. Oct. 5, 2017), *perm. appeal denied* (Tenn. Jan. 22, 2018).

At trial, Ezikeal Scott testified that, on the night of March 30, 2015, he was at Jessica Spencer's apartment when "a man, later identified as the Defendant, came into the living room from the back of the apartment and sat down on the couch" next to him. *Gant*, 2017 WL 4457593, at *1. At that time, Spencer was in her bedroom. *Id.* The defendant and Scott discussed Scott's Mustang, which was parked outside and which Scott was selling. *Id.* Scott testified "that the [d]efendant told him he had a gun for sale and [he] showed . . . Scott a revolver." *Id.* Scott then "heard a knock at the door . . . and . . . a man, who was unknown to . . . Scott, came into the apartment." *Id.* A second man, who was wearing a ski mask and holding a handgun, later "entered the apartment." *Id.* The victim then recounted "that the Defendant ordered [him] to the back of the apartment and that the first unknown man escorted [him]." *Id.* On Gant's orders, the first unknown man searched Scott's shirt and pants. *Id.* The men then brought the victim back to the living room, where Gant and the man who was wearing the ski mask "ordered Mr. Scott to remove his clothing, his wallet and money, and to lie face-down on the floor." *Id.* The witness recalled "that the masked man pointed a gun at him as he undressed and that he felt threatened." *Id.* Spencer was then brought into the living room and she, along with Scott, "were ordered to sit on the couch." *Id.*

Scott further recalled that Gant "told the other two unknown men to go to . . . Scott's Mustang[.]" *Id.* The men later "returned with three televisions, cologne, and cell phones, which they had retrieved from [the] Mustang." *Id.* Gant and the men then "took [Scott's] wallet, money, and another cell phone from [his] pants pocket." *Id.* Scott further testified, !

2

that the unknown men left the apartment and that the Defendant told the men to "call ... when you get to where you're going."

Mr. Scott testified that the Defendant remained in the living room with the revolver. Mr. Scott stated that the Defendant told him that he could not leave until the unknown men "got to where they were going." Mr. Scott said that the Defendant instructed him not to report the incident to the police. Mr. Scott stated that the Defendant allowed him to leave after approximately five minutes but that Ms. Spencer remained in the apartment.

*Id.*

The victim recalled "that he drove his Mustang home," and "his mother contacted the police[.]" *Id.* Scott later "identified the Defendant in a photograph lineup." *Id.*

On cross-examination, "Scott testified that during the preliminary hearing, he mistakenly stated that no one other than the masked man was armed. He said the Defendant had a gun." *Id.* at *2. He described on redirect examination that he "'was being held like [he] couldn't move.'" *Id.* "He stated that before the Defendant allowed him to leave the apartment, the Defendant told him, 'Don't call the police, I got your I.D.'" *Id.*

Officers from the Jackson Police Department testified that they searched Spencer's apartment and did not find her there. *Id.* They eventually located her and Gant in "one of the apartments" in the same building. *Id.* The defendant was found "lying in a bathtub." *Id.* at *3. Officers also "found a plastic bag hidden in the toilet tank [which] contained a semi-automatic handgun and a revolver." *Id.*

"Jessica Spencer testified that she had known the Defendant for a few months at the time of the incident and that he lived in her apartment." *Id.* She explained that when she and Scott returned to her apartment after dinner, "she went to the bathroom to take a shower." *Id.* When

3

she exited the bathroom, the man in the ski mask "held a handgun to her face." *Id.* When the man moved her to the living room, she observed Scott lying "face-down on the floor wearing boxers, an undershirt, and socks." *Id.* She testified "that it appeared 'they had already robbed'" Scott. *Id.* She recalled "that the other two men left the apartment and that the Defendant told Mr. Scott that he could not leave until the Defendant received a telephone call." *Id.*

On cross-examination, Spencer insisted that Gant "never kidnapped her or threatened to harm her." *Id.* She also acknowledged "that she was afraid of the Defendant after the robbery and that he had her cell phone and would not allow her to call anyone." *Id.*

The jury convicted Gant of aggravated robbery, aggravated kidnapping, and facilitation of burglary of a vehicle. *Id.* at *1. He was sentenced "to consecutive nine-year terms for the aggravated robbery and aggravated kidnapping convictions." *Id.* He "received concurrent sentences of four years for the firearm convictions and eleven months, twenty-nine days for the facilitation of burglary of a vehicle," resulting in an effective sentence of eighteen years' imprisonment. *Id.*

On appeal, Gant argued that the evidence was insufficient to sustain the aggravated kidnapping conviction and that the sentence was improper. *Id.* The Tennessee Court of Criminal Appeals ("TCCA") rejected both arguments and affirmed the conviction and sentence. *Id.* The Tennessee Supreme Court denied permission to appeal. (ECF No. 12-14.) !

Petitioner subsequently "filed a timely pro se petition for post-conviction relief in which he argued that trial counsel was ineffective for (1) failing to object to the trial court's improper jury instruction regarding the kidnapping charge; (2) failing to file a motion to suppress; and (3) failing to object to erroneous jury instructions regarding the applicable range of punishment."

4

*Gant v. State*, No. W2019-00147-CCA-R3-PC, 2020 WL 918603, at *3 (Tenn. Crim. App. Feb. 25, 2020). He did not file an amended petition following the appointment of counsel. *Id.* "[A]t the post-conviction hearing, post-conviction counsel clarified the petitioner's first issue, arguing trial counsel was ineffective for failing to adequately present the defense that the kidnapping in this case was incidental to the robbery." *Id.*; (*See also* ECF No. 12-16 at 7-8.) The post-conviction trial court denied the claims in a written order. (ECF No. 12-15 at 66-67.) On appeal, Petitioner raised the sole contention that counsel rendered ineffective assistance by failing to adequately develop the theory that the kidnapping was incidental to the robbery. (ECF No. 12-18 at 6.)  !

## DISCUSSION

Gant filed the Petition on June 23, 2020. He posits that the evidence was insufficient to sustain the aggravated kidnapping conviction (Claim 1), the trial court erred by allowing the admission of two guns into evidence (Claim 2), and the trial court improperly sentenced him to an effective 18-year sentence (Claim 3). He further asserts that trial counsel rendered ineffective assistance by failing to "adequately present [the] defense [that] the confinement of the victim, Mr. Scott, 'did not' exceed that which was necessary to accomplish the robbery and facilitation of burglary of a vehicle" (ECF No. 1-1 at 1) (Claim 4A), failing to challenge the indictment on double jeopardy grounds (Claim 4B), and failing to file a motion to suppress the guns (Claim 4C).[1]

---

[1] The Court has renumbered the claims for ease of discussion.

Respondent Johnny Fitz[2] filed the state court record and a response to the Petition. (ECF No. 12, 15.)[3] He argues that several of the claims are procedurally defaulted, one is non-cognizable, and two are without merit. Petitioner did not file a reply, although allowed to do so. (*See* ECF No. 6 at 2.)

## I. Legal Standards

### A. Federal Habeas Review

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted when the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

---

[2] The Clerk is **DIRECTED** to modify the docket to reflect Johnny Fitz as Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); Fed. R. Civ. P. 25(d).

[3] The Clerk is **DIRECTED** to place the document at ECF No. 12-1 under seal, as it contains Petitioner's social security number.

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

7

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848.  A petitioner procedurally defaults his claim when he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007).  Procedural default also occurs when the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985).  To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Id.* at 750.  The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of a substantial ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).  A claim is substantial if it has "some merit." *Martinez*, 566 U.S. at 14.

A petitioner may also overcome his procedural defaults by establishing a "gateway" claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995).  To open the gateway, a prisoner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—

8

that was not presented at trial." *Id.* at 324. He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 327.

### B. Sufficiency of the Evidence

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (holding *Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 319. *See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (holding that, under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). *Jackson*'s evidence-sufficiency standard may be met with circumstantial evidence. *See Desert Palace, Inc., v. Costa*, 539 U.S. 9, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *see also United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.").

9

The AEDPA adds a layer of deference to *Jackson's* already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or "based on an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254(d)(1)-(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 566 U.S. at 656.

### C. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Pollini v. Robey*, 981 F.3d 486, 493 (6th Cir. 2020), *cert. denied*, No. 20-7918, 2021 WL 2519379 (U.S. June 21, 2021). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

10

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Id.* at 690-91. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

## II. Claim 1

Petitioner insists in Claim 1 that "[t]he evidence presented at trial was insufficient to sustain [his] conviction for aggravated kidnapping." (ECF No. 1-1 at 2.) He raised the issue on direct appeal, but the TCCA rejected it. *Gant*, 2017 WL 4457593, at *1, 4. Respondent maintains

11

that Gant is not entitled to relief on his evidence-sufficiency claim because the state court's decision meets the AEDPA's deferential standards. The Court agrees.

In Tennessee, "[a]ggravated kidnapping is defined as false imprisonment committed 'while the defendant is in possession of a deadly weapon[.]'" *Id.* at *4 (quoting Tenn. Code Ann. § 39–13–304). "False imprisonment occurs when a person 'knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty.'" *Id.* (quoting Tenn. Code Ann. § 39–13–302). The element of substantial interference with liberty is met only when "the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony." *State v. White,* 362 S.W.3d 559, 578 (Tenn. 2012). Conversely, the element is not fulfilled when the confinement is "essentially incidental" to the felony. *Id.*

On direct appeal, Petitioner argued that the evidence was insufficient to sustain the aggravated kidnapping conviction because the confinement of Scott was incidental to the robbery and burglary. (ECF No. 12-9 at 15.) In addressing the claim, the TCCA set forth *Jackson*'s evidence-sufficiency standards, discussed the proofs required to convict Gant of aggravated kidnapping, and reviewed the evidence produced at trial. *Gant*, 2017 WL 4457593, at *1-4. The court found that,

> [a]fter the two unknown men left Ms. Spencer's apartment and the aggravated robbery and vehicle burglary were complete, the Defendant remained inside the apartment with Mr. Scott and Ms. Spencer. The Defendant held a revolver and did not permit Mr. Scott to leave the apartment until the Defendant received a telephone call. The Defendant detained Mr. Scott inside the apartment for several minutes before allowing Mr. Scott to leave.

*Id.* at *4.

The TCCA further found "that the trial court properly instructed the jury that 'unless you find beyond a reasonable doubt that the alleged victim's removal or confinement exceeded that which was necessary to accomplish the alleged [a]ggravated [r]obbery or [v]ehicular [burglary] and was not essentially incidental to it, you must find the Defendant not guilty of kidnapping." *Id.* Based on this record, the court "conclude[d] that the evidence [was] sufficient to support the jury's findings that the confinement was not essentially incidental to the robbery and burglary and was sufficient enough to support an independent conviction for aggravated kidnapping." *Id.*

As noted, the TCCA correctly identified *Jackson*'s evidence-sufficiency standards and applied them to the facts of Petitioner's case. Gant thus has not shown that the appellate court's evidence-sufficiency determination is "contrary to" controlling Supreme Court law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

He has also failed to establish that the appellate court's conclusion that the evidence was sufficient to sustain the aggravated kidnapping conviction, and the factual determinations on which it is based, are unreasonable. To begin, he does not identify any clear and convincing evidence to undermine the court's factual findings as to the way in which the events unfolded, including the fact that Gant detained the victims for several minutes after the robbery and burglary were completed. Based on that series of events, the appellate court did not unreasonably hold that a reasonable juror could find that Gant's confinement of Scott went beyond what was necessary to accomplish the robbery and burglary. Claim 1 is **DENIED**.

13

### III. Claim 2

Petitioner insists in Claim 2 that the trial court erred in admitting the two handguns into evidence. He acknowledges that he procedurally defaulted the claim by failing to raise it in the state courts. He argues, however, that *Martinez* applies to excuse the default.

The argument is unavailing. It is well established that a post-conviction attorney's ineffective assistance will only excuse the procedural default of a trial-counsel-ineffective-assistance claim. *See Abdur'Rahman v. Carpenter*, 805 F.3d 710, 716 (6th Cir. 2015). Claim 2, which alleges a trial error, is not such a claim. The claim is therefore **DISMISSED**.

### IV. Claim 3

Petitioner maintains in Claim 3 that "[t]he Trial Court improperly imposed the sentence[.]" (ECF No. 1-1 at 2.) He raised the issue on direct appeal, arguing that the trial court failed to properly apply state sentencing law. (ECF No. 12-9 at 16-18.) The TCCA rejected the argument and affirmed the sentence. *See Gant*, 2017 WL 4457593 at *5-7. Respondent maintains that the claim cannot be brought in this § 2254 proceeding. The position is well-taken.

Habeas corpus relief is available only on the ground that the state prisoner is in custody in violation of the Constitution or laws or treaties of the United States, 28 U.S.C. 2254(a), and therefore will "not lie for errors of state law." *Estelle v. McGuire,* 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990)). The question of whether or not the state court erred in sentencing Gant is a matter of state, not federal, law. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."). Petitioner's sentencing claim is therefore non-cognizable. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016) ("[E]rrors in the

14

application of state sentencing guidelines ... cannot independently support habeas relief[.]"). Claim 3 is **DISMISSED**.

V. **Claim 4A**

In Claim 4A, Gant posits that counsel rendered ineffective assistance by failing to adequately present the defense theory that Petitioner was not guilty of aggravated kidnapping because his confinement of Scott was incidental to the robbery and burglary. He exhausted the claim by raising it in the post-conviction trial court and on appeal. (ECF No. 12-18 at 6.) Respondent argues that the claim is without merit.

At the post-conviction hearing, "[P]etitioner testified he told trial counsel he was willing to accept a plea offer 'because [he] knew [he] was guilty.'" *Gant*, 2020 WL 918603, at *4. "However, he believed the victim's confinement was incidental to the robbery and wanted to proceed to trial on the aggravated kidnapping charge." *Id.* He explained why he thought counsel should have pursued that theory:

> Just that I don't feel that it's a kidnapping because, like, when—like, all the people—all the parties that was included, like, was already at the apartment. And when I came in and—like if, you doing a robbery, you got to get everybody under control because it's—it's like—it's—it's security purpose, due to the fact of any one of them be—could be armed or anything.
>
> So once I got the money and stuff like that, I let—I let them go, you know. I didn't—I didn't never take them with me or tie them up or interfere with they— their liability, period.
>
> I don't feel it was a—a kidnapping.

(ECF No. 12-16 at 18.)

Gant further testified that he "explained his concerns with trial counsel, [but] counsel did not present this defense to the jury." *Gant*, 2020 WL 918603, at *4. "When asked what trial

15

counsel should have done differently, the petitioner testified she should have asked the victim and Ms. Spencer whether 'they fe[lt] like they [were] being kidnapped.'" *Id.*

On cross-examination, Petitioner "denied having two accomplices, telling the victim to take his clothes off, or holding the victim at gunpoint until the petitioner's accomplices could get to safety." *Id.* "However, he acknowledged that the jury heard this evidence and that no witnesses testified to the contrary." *Id.* He also conceded that he unsuccessfully raised on direct appeal the argument that the kidnapping was incidental to the other felonies. *Id.*

The State did not call trial counsel to testify at the post-conviction hearing. *Id.* at *5. It called appellate counsel, however, who testified that "he raised the sufficiency of the evidence to support the petitioner's kidnapping conviction and argued the kidnapping was incidental to the robbery." *Id.* at *4. As noted, the TCCA rejected the argument. *Id.*

After its review of the evidence, the post-conviction trial court denied relief on all claims. (ECF No. 12-15 at 66; 12-16 at 44-48.) As to Petitioner's assertion that counsel was ineffective for failing to develop the theory that the confinement of Scott was incidental to the robbery and burglary, the court found that,

> [t]here's been no proof presented of any witness who could have testified to anything different than what was testified to at trial.
>
> There's been no testimony from any witness or any testimony from Mr. Gant here today to show what counsel should have done differently, what witnesses were out there to establish that the kidnapping was any greater—or was not any greater than what was needed to effectuate the robbery.
> So he has the duty in post-conviction to present the proper evidence. He hasn't made a showing.
> ***
> He hasn't shown that [counsel's] errors with regard to that issue were so serious that she wasn't functioning as a counselor; and, secondly, he hasn't shown that it—that there was any testimony out there that would make it prejudicial to his defense.

16

(ECF No. 12-16 at 47-48.)

On appeal, the TCCA set forth *Strickland's* ineffective-assistance standards and reviewed the criminal trial record and the evidence adduced at the post-conviction hearing. *Gant*, 2020 WL 918603, at *4-5. The court "agree[d] with the post-conviction court" that Gant produced no evidence or witnesses that would have supported a theory that the confinement of the victims was incidental to the other crimes. *Id.* at *5. The TCCA therefore concluded that Gant's "claim that a more vigorous pursuit of his proposed defense would have yielded a more favorable verdict is purely speculative, especially in light of the evidence that the petitioner held the victim at gunpoint for five minutes after the completion of the robbery to allow his accomplices time to escape." *Id.* The court thus held that Petitioner did not show that counsel performed deficiently. *Id.* The TCCA further held that, "even if trial counsel were deficient in failing to argue the kidnapping was incidental to the robbery, the petitioner cannot establish prejudice" because the court found on direct review "that the confinement 'was not essentially incidental to the robbery and burglary and was significant enough to support an independent conviction for aggravated kidnapping.'" Id. (citing *Gant*, 2017 WL 4457593, at *6).

The TCCA's decision survives each deferential AEDPA standard. Firstly, the decision is not contrary to clearly established Supreme Court law because, as indicated above, the state court identified and applied the standards announced in *Strickland*. *See Williams*, 529 U.S. at 406.

Secondly, Gant has not established that the TCCA's decision is based on unreasonable factual determinations. For one thing, he does not argue that point. For another, he fails to identify any clear and convincing evidence to contradict the TCCA's factual determination that he did not present any evidence at the post-conviction hearing to support his preferred defense theory.

17

In light of this record, the TCCA did not unreasonably conclude that counsel did not perform deficiently. Nor did the court unreasonably hold that Petitioner failed to establish that counsel's conduct prejudiced him. *See e.g.*, *Battle v. Williams*, No. 219CV00453GMNDJA, 2020 WL 2615687, at *9 (D. Nev. May 21, 2020) (no prejudice resulted from appellate counsel's failure to argue that the kidnapping was incidental to the robbery where the evidence adduced at trial demonstrated that petitioner moved the victim "to a secluded portion of the store and . . . restrain[ed] . . . the victim" after he completed the robbery).

The state court's application of *Strickland*'s standards to the facts therefore survives federal habeas review. Claim 4A is **DENIED**.

## VI.   Claims 4B and 4C

Petitioner acknowledges that he procedurally defaulted Claims 4A and 4C by failing to present them through one complete round of the State's established appellate review process. (ECF No. 1-1 at 1.) He argues, however, that pursuant to *Martinez*, post-conviction counsel's failure to raise the claims is cause to excuse the defaults. Respondent maintains that Petitioner's reliance on *Martinez* to lift the procedural bar to federal habeas review is misplaced. The Court agrees.

In Claim 4B, Petitioner argues that counsel should have challenged the indictment on double jeopardy grounds[4] because employment of a firearm was an essential element of the separate charge of aggravated kidnapping. The claim does not pass *Martinez*'s substantiality test,

---

[4] The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The prohibition ... protects individuals not only from successive trials, but also prohibits multiple punishments for the same offense." *United States v. DeCarlo*, 434 F.3d 447, 454 (6th Cir. 2006) (citing *Witte v. United States*, 515 U.S. 389, 391 (1995) and *Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997)).

however, because it does not have "some merit." *Martinez*, 566 U.S. at 14. More to the point, the record shows that the prosecution ultimately dismissed the firearm charge. (ECF No. 12-1 at 62, 74.) Accordingly, no prejudice resulted from counsel's alleged deficient performance. Petitioner's procedural default of Claim 4B is thus not excused.

So, too, the procedural default of Claim 4C. In that claim, Gant maintains the counsel rendered ineffective assistance by failing to file a motion to suppress the handguns. He presented the issue to the post-conviction trial court. (ECF No. 12-15 at 18, 22-29.) He did not, however, appeal the denial of the claim. (ECF No. 12-18 at 6.) It is well established that *Martinez* does not apply to excuse a procedural default that occurs on post-conviction appeal. *See Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016). The procedural default of Claim 4C is therefore unexcused.

Because Claims 4B and 4C are not properly before the Court, they are **DISMISSED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds,

the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[5]

                                                 s/ S. Thomas Anderson
                                                 S. THOMAS ANDERSON
                                                 UNITED STATES DISTRICT JUDGE

                                                 Date: September 19, 2023.

---

[5] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.